UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE IMMUNITYBIO, INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No.:  3:24-cv-02014-GPC-VET<br><br>**ORDER:**<br><br>**(1) GRANTING PROVISIONAL APPROVAL OF DERIVATIVE ACTION SETTLEMENT;**<br><br>**(2) CONDITIONALLY APPROVING THE PROPOSED FORM AND MANNER OF NOTICE; AND**<br><br>**(3) SETTING DATE FOR FINAL SETTLEMENT HEARING**<br><br>**[ECF No. 34]** |

Before the Court is Plaintiffs' Motion for Preliminary Approval of Derivative Settlement.  ECF No. 34.  The Motion is unopposed.  *Id.* at 3.  For the reasons detailed below, the Court **GRANTS** preliminary approval of the Parties' settlement of this derivative action and conditionally approves the proposed form and manner of settlement

notice.

## I.    BACKGROUND

### A.    Factual Allegations

This is a shareholder derivative action on behalf of nominal defendant ImmunityBio, Inc. ("ImmunityBio" or "the Company") against current and former ImmunityBio directors and officers (collectively "Individual Defendants,"[1] and together with ImmunityBio, the "Defendants").  ImmunityBio is a biotechnology company that develops therapies and vaccines that bolster the body's immune system to treat cancers and infectious diseases.  ECF No. 34-1 ("Motion" or "Mot.") at 4.  In May 2023, ImmunityBio announced that the FDA had rejected its Biologics License Application ("BLA") for Anktiva (its lead biologic product) because of current good manufacturing practice ("cGMP") deficiencies identified during a pre-license inspection of its contract manufacturing organizations ("CMOs").  *Id.*

Plaintiffs allege that between March 10, 2021 and May 10, 2023, the Individual Defendants breached their fiduciary duties to ImmunityBio and its shareholders  and committed other misconduct by failing to conduct adequate oversight and making or causing others to make a series of materially false and misleading statements that failed to disclose the following: "(1) cGMP deficiencies at the Company's third-party CMOs for Anktiva; (2) that one or more of the Company's CMOs for Anktiva did in fact suffer from cGMP deficiencies; (3) that the foregoing deficiencies were likely to cause the FDA to reject the Company's BLA for Anktiva; and (4) that the Company overstated the regulatory approval prospects for the Anktiva BLA."  *Id.*

### B.    Procedural Background

On February 9, 2024, ImmunityBio shareholder Roland Davies ("Davies") exercised his stockholder right to inspect, pursuant to  8 Del. C. § 220, and issued a

---

[1] The Individual Defendants are Patrick Soon-Shiong, Richard Adcock, Cheryl L. Cohen, Michael D. Blaszyk, John Owen Brennan, Linda Maxwell, Wesley Clark, Christobel Selecky, Barry J. Simon, and David C. Sachs.

"Section 220" demand to ImmunityBio to see its books and records in connection with the alleged misconduct. *Id.* at 5. In response, ImmunityBio responded produced over 600 pages of non-public, Board-level, internal corporate documents ("220 Documents"). *Id.* Davies reviewed these documents, and on September 17, 2024, he served ImmunityBio's Board of Directors with a pre-suit demand under Delaware law asking the Board to begin investigating the alleged misconduct described above in Section I.A. and/or file a lawsuit against the Individual Defendants regarding said misconduct. *Id.*

On September 24, 2024, ImmunityBio shareholder Chris Pallas ("Pallas") made a substantially similar Section 220 demand on ImmunityBio. *Id.* ImmunityBio produced the responsive documents to Pallas. *Id.* Davies's demand and Pallas's demand are collectively known as the "Demands." *Id.* at 8

On October 29, 2024, Plaintiff Gary Van Luven ("Van Luven") filed a shareholder derivative complaint on behalf of ImmunityBio against the Individual Defendants, asserting claims for violation of the Securities Exchange Act of 1934 (the "Exchange Act") and for breach of fiduciary duty, unjust enrichment, and waste of corporate assets under Delaware law. *Id.* at 12. On February 25, 2025, Plaintiff Angelo Barbieri ("Barbieri") filed a substantially similar shareholder derivative complaint on behalf of ImmunityBio against certain of the Individual Defendants, asserting substantially similar claims. *Id.* at 12–13. On February 26, 2025, Plaintiff Bong Shin ("Shin") filed a third substantially similar shareholder derivative complaint on behalf of ImmunityBio against the Individual Defendants, asserting substantially similar claims. *Id.* at 13.

On May 2, 2025, the parties to these three derivative actions (the "Derivative Actions") jointly moved to consolidate their cases and to appoint Kuehn Law, PLLC as Lead Counsel for plaintiffs Van Luven, Barbieri, and Shin (the "Plaintiffs"); the Court granted their motion the same day. ECF No. 32.

Plaintiffs, Davies, and Pallas are collectively known as the "Shareholders," Mot. at 1, and together with ImmunityBio and the Defendants, as the "Parties." ECF No. 33-1 at

2.[2]  The Derivative Actions and Demands together are the "Derivative Matters." *Id.*

### C.  Settlement Agreement

The key terms of the Stipulation of Settlement, ECF. No. 33-1 ("Settlement Agreement" or "SA"), are as follows:

1.  Settlement Benefits

ImmunityBio will keep the corporate governance reforms set forth in Exhibit A of the Settlement Agreement in place for at least four years. *Id.* at 25.  These reforms include:

- i.    The appointment of an independent director to the Board of Directors on or before December 31, 2025;
- ii.   Enhancements to the Disclosure Committee Charter;
- iii.  Enhancements to the Audit Committee Charter;
- iv.   Public posting of Corporate Governance Guidelines and Board Committee Charters on the Company's public website and if any such documents are amended, the Company will post the updates within a reasonable time;
- v.    Quarterly Board discussion concerning topics relevant to allegations in the Plaintiffs' claims such as the Company's and its CMOs' compliance with FDA regulations and cGMP, in order to identify material risks;
- vi.   Annual legal department review and report on effectiveness of Company policies, procedures, and practices related to compliance with FDA regulations; and
- vii.  Mandatory risk assessment and compliance training on annual basis for Company employees involved with preparing financial statements, manufacturing Company products, communicating with the FDA and independent external auditor, and preparing public statements.

*See* Mot. at 8-12; ECF No. 33-1, Ex. A.

---

[2] Page numbers for ECF No. 33 refer to the CM/ECF pagination.

2.  <u>Releases</u>

Under the Settlement Agreement, the Derivative Matters will be fully and finally compromised and settled, the Released Claims will be released as against the Released Persons, and the Derivative Actions will be dismissed with prejudice as against the Released Persons.  ECF No. 33-1 at 8.

The Released Claims include all claims, demands, rights, and causes of action based on any jurisdiction's laws that have been, could have been, or might be asserted in the Derivative Matters or in any other court, tribunal, or proceeding by the Shareholders or any other Current ImmunityBio Stockholder directly or derivatively on behalf of ImmunityBio, or by ImmunityBio directly, against any of the Released Persons, or by the Released Persons against ImmunityBio or any other Released Person, which arise out of any matters related to the Derivative Action complaints, the allegations described in the Demands, or the Derivative Actions and the institution, prosecution and settlement thereof.  *Id.* at 10.

The Released Claims do not include, and neither the Stipulation nor any part of the Settlement will affect claims relating to enforcement of the Settlement, the Stipulation, or any other agreement among any or all of the Parties and relevant insurers in connection with the Settlement.  *Id.*  The Released Claims also do not include the derivative claims asserted on behalf of ImmunityBio, Inc. in the unrelated shareholder derivative lawsuit pending in the Delaware Court of Chancery captioned *Carlson v. Soon-Shiong*, et al., C.A. No. 2024-1185-JTL.  *Id.*

The Released Persons include ImmunityBio, the Individual Defendants, the Shareholders, and their respective past, present, or future heirs, trusts, trustees, estates, beneficiaries, and other entities and persons with whom they have legally binding relationships or duties.  *Id.* at 11.

3.  <u>Notice</u>

No later than ten (10) business days after the Court enters its Preliminary Approval Order, ImmunityBio will: post the Notice of the Settlement Agreement and the

Stipulation (with corresponding exhibits) on the Investor Relations page of its website and maintain the Notice and Stipulation there until after the Settlement Hearing; publish the Summary Notice of the Settlement Agreement in *Investor's Business Daily* with a link to its Investor Relations webpage where the Notice and Stipulation (with corresponding exhibits) will be posted and available; and file with the U.S. Securities and Exchange Commission the Notice and Stipulation (with corresponding exhibits) as exhibits to a Current Report on Form 8-K. *Id.* at 13.

ImmunityBio will bear all the costs and expenses of disseminating the notices of the proposed Settlement ("Notice Costs"), regardless of whether the Court declines to approve the Settlement or the Final Approval of Settlement fails to occur. *Id.* at 14. The Shareholders, any other ImmunityBio stockholder, the Defendants, or any of their attorneys (including Shareholders' Counsel) will not be responsible for any Notice Costs. *Id.*

### 4. Attorneys' Fees and Expenses

Despite negotiations and their participation in a mediation session, the Parties have not agreed on the amount of Shareholders' Counsel's attorneys' fees. Mot. at 22. Shareholders' Counsel will file a motion for fees and litigation expenses alongside Plaintiffs' motion for final settlement approval. *Id.* Defendants will have the opportunity to respond to the motion or oppose Shareholders' Counsel's request for fees and expenses. *Id.*

Shareholders' Counsel may petition the Court for an award of attorneys' fees and litigation expenses (the "Fee and Expense Award") not exceeding $2,500,000. *Id.* Shareholders' Counsel intends to petition the Court for a Fee and Expense Award of $1,400,000. *Id.* at 22–23. ImmunityBio and its insurers will be responsible for paying any Fee and Expense Award, and the Parties agree that no other person or entity will be responsible for contributing to the payment of the Fee and Expense Award. ECF No. 33-1 at 15.

### 5. Service Award

Plaintiffs' Counsel may apply to the Court for service awards of up to twenty-five hundred dollars ($2,500.00) for each of the Shareholders, only to be paid if the Court approves them. *Id.* at 16. The service awards would be paid from any Fee and Expense Award in recognition of the Shareholders' efforts in initiating, prosecuting, and settling the Derivative Matters. *Id.* The failure of the Court to approve any requested service awards will not impact the Settlement. *Id.* at 16-17. Neither ImmunityBio nor any of the Individual Defendants will pay for any portion of any service awards. *Id.* at 17.

## II. LEGAL STANDARD

A derivative action may be settled only with the court's approval. Fed. R. Civ. P. 23.1(c). "In determining whether to approve the settlement of a derivative action, courts look to cases and standards under Rule 23(e) of the Federal Rules of Civil Procedure for guidance by analogy." *In re CPI Aerostructures S'holder Derivative Litig.*, , 2023 WL 2969279, at *3 (E.D.N.Y. Feb. 14, 2023); *see also In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5634607, at *1 (C.D. Cal. Jan. 24, 2017) (When reviewing a derivative action settlement for approval, "[t]he Court takes as instructive case law governing preliminary approval of class action settlements under Rule 23(e)").

"Rule 23 requires courts to employ a two-step process in evaluating a class action or derivative action settlement." *In re Wells Fargo & Co. Sharehold Derivative Litig.*, No. 16-CV-05541-JST, 2019 WL 13020734, at *4 (N.D. Cal. May 14, 2019). First, the court "must make a preliminary determination that the settlement is fair, reasonable, and adequate" under Rule 23(e)(2). *Id.* (internal citation and quotations omitted). Only if a settlement is "fundamentally fair, adequate, and reasonable" may it be approved. *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12-CV-06003-CRB, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015) (internal citation and quotations omitted). "[I]f the court preliminarily approves a derivative action settlement, notice 'must be given to shareholders or members in the manner that the court orders.'" *In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *4 (quoting Fed. R. Civ. P. 23.1(c)). The court then holds a hearing to "make a final determination whether the settlement is

'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

In the context of a derivative action, courts evaluate fairness, reasonableness, and adequacy by considering a range of factors, such as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation . . . the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel…" *Id.* (internal citation and quotations omitted).  When evaluating the adequacy of nonmonetary settlement provisions like corporate governance reforms, courts examine whether a company is already undertaking the provisions independently of the settlement.  If the reforms proposed in the settlement were already implemented or going to be implemented by the company, then courts are more doubtful of the value of the settlement.  *See In re Lyft, Inc. Derivative Litig.*, 2024 WL 4505474, at *4 (N.D. Cal. Oct. 16, 2024) ("the Court is skeptical that the reforms presented here are a benefit *of the settlement* rather than [the company's] own independent actions") (emphasis in original); *In re Pinterest Derivative Litig.*, 2022 WL 2079712, at *3 (N.D. Cal. June 9, 2022) (critical of the fact that "a fair number of the reforms were already in place as a result of the corporation's own actions addressing the [underlying action's allegations]").

Overall, the principal factor that courts consider is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Pinterest Derivative Litig.*, 2022 WL 484961, *3 (N.D. Cal. Feb. 16, 2022) (internal citation and quotations omitted).  Further, courts scrutinize whether the proposed settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties." *In re Hewlett-Packard*, 2015 WL 1153864, at *3 (internal citation and quotation omitted).  *See also Lloyd v. Gupta*, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016) (noting that courts consider whether "the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interest of the shareholder class") (internal citation and quotations omitted).

At the preliminary approval stage, the Court need not definitively decide whether

the proposed settlement survives scrutiny under these standards; instead, it need only determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (internal citation and quotations omitted); *see In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *4.

## III.    DISCUSSION

### A.    Proposed Settlement

#### i.    Benefits to ImmunityBio

The Parties assert that the proposed settlement will benefit ImmunityBio because the corporate governance reforms (listed in Exhibit A of the Stipulation) will lower ImmunityBio's risk of further loss of investor confidence and lawsuits. Mot. at 18. The Parties argue that the reforms will also enhance ImmunityBio's value by improving its decision-making and its Board's oversight of these decisions. *Id.* The reforms will engender greater investor trust in the accuracy of the company's public disclosures, the integrity of the company's management, and the independence and effectiveness of the company's corporate governance and Board oversight. *Id.*

"[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *see also In re Ceradyne, Inc.*, No. SACV 06-919-JVS (PJWx), 2009 WL 10671494, at *2 (C.D. Cal. June 9, 2009) ("Non-pecuniary benefits to the corporation have been deemed adequate consideration for the settlement of derivative suits ... [and] can be particularly valuable when the relief is intended to prevent future harm" (citations omitted)). "Courts have recognized that corporate governance reforms ... provide valuable benefits to public companies." *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (quotation omitted).

Courts have found that corporate governance reforms that directly address alleged corporate misconduct are beneficial to companies in derivative action settlement

approvals.  *See Moore v. Verb Tech. Co., Inc.*, 2021 WL 11732976, at *4 (C.D. Cal. Mar. 1, 2021) (finding that "corporate governance measures that specifically address the allegations in the derivative action" substantially benefit the company by helping prevent it from making additional misleading statements about its app development agreement); *In re Taronis Techs., Inc. S'holder Derivative Litig.*, 2021 WL 842137 (D. Ariz. Mar. 5, 2021) (finding that corporate governance changes conferred sufficient benefit to company because they addressed compliance with public reporting requirements that the company had allegedly not complied with).

The Court agrees with the Parties that the corporate governance reforms listed in Exhibit A of the Stipulation benefit ImmunityBio.  Though non-pecuniary, the reforms benefit ImmunityBio specifically because they directly address the alleged deficiencies listed in Plaintiffs' derivative actions.  For example, the reforms dictate that ImmunityBio's management will report to the Board at least quarterly about the company's compliance with FDA regulations and cGMP, and about ImmunityBio's CMOs' compliance with cGMP.  ECF No. 33-1 at 25–26.  The reforms also mandate changes to ImmunityBio's Disclosure Committee Charter.  *Id.*  The Disclosure Committee would now be charged with establishing and maintaining processes for ensuring that the company does not disclose false or misleading information in its SEC reports, quarterly earnings press releases, and press releases and public statements concerning the company's drug development, compliance with cGMP, and interactions with the FDA.  *Id.* at 29.  This specifically tackles the Derivative Actions' allegation that the Individual Defendants made or allowed others to make false and misleading statements about cGMP deficiencies at ImmunityBio's CMOs and the prospects for FDA approval of ImmunityBio's lead drug product.

Most notably, the reforms mandate that the Company shall establish and maintain training programs that are "focused on compliance, internal controls policies and proceeds, compliance risk assessment, and complaint reporting and investigation."  ECF No. 33-1, Ex. D at 59.  These trainings will be mandatory for employees who are

involved in preparing financial statements, manufacturing the Company's products, communicating with the FDA and the Company's independent external auditor, and drafting the Company's public statements. *Id.* at 60. These trainings would occur on an annual basis. *Id.* at 59. The Court finds that this proposed training program is substantial, directly addresses the alleged corporate misconduct, and would provide a considerable benefit to the Company.

Further, the reforms' benefits are bolstered by the fact that ImmunityBio will implement and maintain the reforms for four years following the effective date of the settlement. This is meant to be a "meaningful amount of time intended to ensure the Reforms become embedded in the Company's policies, practices, and corporate culture." Mot. at 18. The Court agrees that the multi-year implementation period would be beneficial to the company. *See Chenoy v. Lyft, Inc.*, No. 20-CV-09257-HSG, 2025 WL 948065, at *5 (N.D. Cal. Mar. 28, 2025) ("Because the Settlement Agreement fixes these reforms in place for a three-year period, the reforms may well engender some lasting trust in [the company's] safety and corporate governance, yielding financial benefits for [the company]"). The reforms also benefit ImmunityBio beyond the initial four-year maintenance period because they mandate annual regulatory compliance training for ImmunityBio employees who help prepare and disseminate the company's public statements. *See* ECF No. 33-1 at 26–27.

The Court finds that the Settlement is in the best interest of ImmunityBio, especially considering that the Board unanimously determined that it was. *Id.* at 12. *See In re Southern Co. S'holder Derivative Litig.*, 2022 WL 4545614, at *6 (N.D. Ga. June 9, 2022) (non-defendant directors' unanimous vote for derivative settlement is "exercise of business judgment" that "warrants substantial judicial deference") (collecting cases).

ii.    Non-Collusive, Arm's-Length Negotiations

The Parties assert that the settlement is fair because their counsel is experienced in derivative actions and understands the Derivative Actions' merits, and because they agreed to the settlement only after extensive negotiations. Mot. at 15.

1   Courts must ensure that a settlement agreement "is not the product of fraud or

2   overreaching by, or collusion between, the negotiating parties." *Officers for Just. v. Civ.*

3   *Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  An

4   agreement reached in good faith after well-informed, arms-length negotiation is "entitled

5   to a presumption of fairness."  *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL

6   10212865, at *8 (C.D. Cal. July 28, 2014); *see also Rodriguez v. W. Publ'g Corp.*, 563

7   F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-

8   length, non-collusive, negotiated resolution.")

9         The Court finds the Parties' settlement negotiation process to be fair.  Parties were

10  represented by counsel who understood the strengths and weaknesses of the claims and

11  defenses in the Derivative Matters.  Mot. at 15.  Shareholders' Counsel conducted

12  research and investigated the merits of Plaintiffs' claims by reviewing ImmunityBio's

13  press releases and SEC filings, analyzing the Company's corporate governance

14  guidelines, and reviewing over 600 pages of confidential, board-level Company

15  documents that ImmunityBio produced in response to Davies's and Pallas's Section 220

16  demands.  ECF Mot. at 15–16.

17        The Court also finds the Parties' negotiations to be non-collusive.  Plaintiffs' and

18  Defendants' counsel exchanged settlement offers over the course of several months.  ECF

19  No. 33-1 at 5.  In December 2024, Shareholders' Counsel sent Defendants' Counsel a

20  settlement demand with proposed corporate governance reforms, and in February 2025,

21  Defendants' Counsel responded with a counteroffer of proposed reforms.  *Id.*  Parties'

22  Counsel continued exchanging proposals, and in March 2025, the Parties agreed to the

23  settlement's material terms.  *Id.*  Moreover, the Parties did not discuss or negotiate

24  Shareholders' Counsel's fees until after they agreed to the settlement's material terms.

25  *Id.* at 6.  This favors a finding of no collusion.  *See Moore v. Verb Tech. Co., Inc.*, 2021

26  WL 11732976, at *5 (C.D. Cal. Mar. 1, 2021( finding "no signs of collusion" because

27  "[t]he parties did not begin to negotiate the attorneys' fees and expenses to be paid to

28  Plaintiff's Counsel until after they reached an agreement on the [corporate governance

reforms].”  In fact, the Parties here have not yet agreed on the point of attorneys’ fees. ECF No. 33-1 at 6.  This remaining disagreement further supports a finding that the Parties have not colluded in preparing their settlement.

iii. <u>Risks and Costs of Further Litigation</u>

The Parties assert that the settlement eliminates the risks and costs of ongoing litigation and allows ImmunityBio to return its full attention to its business and restoring its reputation among investors.  ECF No. 34-1 at 27.

“To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs’ case), with the benefits afforded . . . and the immediacy and certainty of a substantial recovery.”  *Velazquez v. Int’l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018). Further, “[c]ourts agree that derivative actions are particularly complex and ‘rarely successful.’”  *de Rommerswael v. Auerbach*, 2019 WL 7753447, at *4 (C.D. Cal. Jan. 7, 2019) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  “The doctrine of demand futility, the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs.”  *In re Fab Universal Corp. S’holder Derivative Litig.*, 148 F. Supp. 3d 277, 281–82 (S.D.N.Y. 2015).

Regardless of their merit, Plaintiffs’ claims would be difficult and costly to sustain if this litigation were to proceed.  “Plaintiffs face risks that the Derivative Matters might not have withstood challenges at the pleading stage, especially given Rule 23.1’s heightened standards for pleading demand futility.”  Mot. at 18.  And according to Plaintiffs, “the claims against all the Individual Defendants rest on circumstantial evidence.”  *Id.* at 19.  Further, the Parties admit that discovery “would be exceedingly costly, complex, and time-consuming” given the large number of documents, depositions, and expert reports they would rely on.  *Id.* at 19–20; *see also Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, 2019 WL 7753447, at

13

*4 (C.D. Cal. Jan. 7, 2019) (approving derivative action settlement in part by noting the potential cost of discovery where biotech drug company was sued over allegedly false and misleading statements about drug product's safety and efficacy).  These high risks and costs contrast with the settlement's certainty and immediacy.  In short, "[a] number of risks are posed by continued litigation, while settlement assures broad corporate reform."  *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 282.

Given the settlement's benefits to ImmunityBio, the Parties' non-collusive negotiation, and the uncertainty and potentially high cost of further litigation, the Court finds the settlement to be sufficiently fair, reasonable, and adequate, and preliminarily approves it at this stage.

### B.    Proposed Form and Method of Notice to Shareholders

The Parties assert that the proposed summary notice and notice of settlement to ImmunityBio shareholders should be approved because it apprises current ImmunityBio shareholders of the pendency and settlement of the Derivative Matters and gives them an opportunity to object to the settlement.  Mot. at 21.  The Parties also argue that their proposed manner of notice through publication has been broadly accepted, given the investment community's transition to an online disclosure system.  *Id.*  The Stipulation notes that ImmunityBio will be solely responsible for paying all the costs of disseminating the notices of the settlement, regardless of whether the Court finally approves the settlement.  ECF No. 33-1 at 14.

Notice of a proposed settlement must be given to shareholders in the manner that the Court orders.  Fed. R. Civ. P. 23.1(c).  Notice to shareholders "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Lloyd*, 2016 WL 3951652, at *6 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).  In determining whether the proposed notice method is adequate, "the Court considers whether such notice would be sufficient to reach the majority of interested stockholders."  *Bushansky v. Armacost*, 2014 WL 2905143, at *6 (N.D. Cal. June 25,

2014) (citing Wright & Miller, Federal Practice & Procedure § 1839).

Further, "courts evaluate whether the notice is the best notice practicable under the circumstances and comports with due process requirements." *In re Galena Biopharma, Inc. Derivative Litig.*, 2016 WL 10843665, at *1 (D. Or. Jan. 28, 2016) (citation omitted). What constitutes the best notice that is practicable under the circumstances is measured by a standard of "reasonableness." *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018). The best type of notice "depends upon the information available to the parties about [the persons to be noticed]." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 718807, at *1 (S.D. Cal. Feb. 5, 2019) (citation omitted). In the context of class actions, recent amendments to Rule 23(c)(2) clarify that the "best notice" practicable under the circumstances may include "electronic means, or other appropriate means," depending on the type of class and its composition. Fed. R. Civ. P. 23(c)(2), committee note (2018 amendment).

### 1. Form of notice

The Court finds that the form of the proposed notice is adequate. The proposed notice describes the purpose of the notice, the history of the Parties' negotiations and present litigation, the terms of the proposed corporate governance reforms, up to how much counsel would seek attorneys' fees and expenses, shareholders' service awards, and the reasons for and benefits of the settlement. *See generally* ECF No. 33-1, Ex. D. It also includes the date of the settlement hearing and describes ImmunityBio shareholders' right to attend this hearing and object to the settlement and the request for attorneys' fees and expenses and service awards, along with the process for making timely objections. *Id.* Shareholders must object in writing and include in their written objection certain identifying information. The shareholders must file any objection with the Court no later than 14 calendar days prior to the settlement hearing. *Id.* at 64. The shareholders must also send their objection by hand or first-class mail, with postage pre-paid, to Shareholders' counsel with a postmark date no later than 14 calendar days prior to the settlement hearing. *Id.*

The proposed summary notice directs readers to the settlement agreement and ImmunityBio's website for a full list of the corporate governance reforms and history of the present litigation. ECF No. 33-1, Ex. C. It states that the Parties agree that the settlement benefits ImmunityBio and its shareholders and is fair, reasonable, and adequate. *Id.* It also states Shareholders' Counsel's intent to request up to $2,500,000 in attorneys' fees and expenses and intent to request Service Awards for the Shareholders. *Id.* The summary notice also states the process for shareholders to make timely objections to the settlement and Shareholders' Counsel's request for attorneys' fees and expenses and service awards, as described above. *Id.*

At the preliminary approval hearing, the Parties clarified that they meant for the shareholder objection deadline to be 28 days before the final approval hearing, not 14 days. Additionally, the Parties requested to set July 31, 2025 as the "Record Date" on the notices, and the Court granted their request. *See* ECF No. 33-1, Ex. C at 48-49; Ex. D at 52. The Court also granted Defendant's request to modify the notices to state that shareholders' counsel would be seeking up to $1.4 million in attorneys' fees and expenses, not $2.5 million. ECF No. 33-1, Ex. C at 49; Ex. D at 60. The Court also independently notes that the courtroom location for the final approval hearing is incorrectly listed on the notices. *Id*. Ex. C at 49 (listing Courtroom 2D); Ex. D at 63 (same). The courtroom for the hearing is in Courtroom 12A. The Court orders the Parties to make all these modifications to the notices.

With these modifications, the Court finds that the full notice and summary notice together adequately apprise ImmunityBio shareholders of the pending status of this litigation, describe the Settlement's terms and conditions, and explain the objection process.

## 2. Method of notice

The Court now considers the proposed method of notice. Within ten business days after preliminary approval of the settlement, ImmunityBio will post the notice and the stipulation agreement (with its exhibits) on the Investor Relations page of its website and

1    maintain the documents there until after the settlement hearing.  ECF No. 33-1 at 13.

2    ImmunityBio will also publish the summary notice in *Investors Business Daily* with a

3    link to its Investor Relations webpage where the notice and stipulation agreement will be

4    posted and available.  *Id.*  Additionally, ImmunityBio will file the notice and stipulation

5    agreement (with its exhibits) with the U.S. Securities and Exchange Commission (the

6    "SEC") as exhibits to a Current Report on Form 8-K.  *Id.*  These three notice methods

7    will likely inform a majority of ImmunityBio shareholders.  Further, courts have

8    approved similar settlement notice procedures in other derivative action cases.  *See In re*

9    *Hewlett-Packard Co. S'holder Derivative Litig.*, 716 F. App'x 603, 608 (9th Cir. 2017)

10    (approving notice procedure of posting notice on defendant company's website,

11    *Investor's Business Daily*, and major newspapers, and filing notice with the SEC as part

12    of an 8-K); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan.

13    20, 2009) (approving notice procedure of posting notice on defendant company's website

14    and Business Wire, and filing notice with the SEC as part of an 8-K).

15         Under recent Rule 23(c) amendments, which permit more cost-efficient notice

16    including "electronic means, or other appropriate means," the Court finds adequate the

17    following notice program: within ten (10) business days after entry of the Court's

18    Preliminary Approval Order, ImmunityBio will  post the full notice, ECF No. 33-1, Ex.

19    D, and the stipulation agreement (with its exhibits), *id.* at 1–24, on the Investor Relations

20    page of its website and maintain the documents there until after the settlement hearing.

21    Within ten (10) business days after entry of the Court's Preliminary Approval Order,

22    ImmunityBio will also publish the summary notice, *id.*, Ex. C, in *Investors Business*

23    *Daily* with a link to its Investor Relations webpage where the full notice and stipulation

24    agreement will be posted and available.  Within ten (10) business days after entry of the

25    Court's Preliminary Approval Order, ImmunityBio will also file the notice and

26    stipulation agreement (with its exhibits) with the U.S. Securities and Exchange

27    Commission (the "SEC") as exhibits to a Current Report on Form 8-K.

28    **C.**     **Shareholders' Counsel's Fees and Service Awards**

Shareholders' Counsel may petition the Court for an award of attorneys' fees and litigation expenses ("Fee and Expense Award") in an amount not to exceed $2,500,000. Mot. at 22. Shareholders' Counsel intends to petition the Court for a Fee and Expense Award of $1,400,000. *Id.* at 22–23. In addition, Counsel will propose a $2,500 service award for each of the Shareholders, to be paid from the Fee and Expense Award, in recognition of the Shareholders' participation and efforts in the initiation, prosecution, and settlement of the Derivative Matters. *Id.* at 30. Counsel will file a Fee and Expense Award motion in which they will argue for the reasonableness of their proposed Fee and Expense Award and service awards for Shareholders. *Id.*

### i. Shareholders' Counsel's Fees

Plaintiffs may be awarded attorneys' fees in derivative suits if the resolution of the claim confers a "substantial benefit" on the corporation. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-95 (1970). "Courts have consistently approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in corporate governance reforms but no monetary relief." *In re Taronis Techs., Inc. S'holder Derivative Litig.*, 2021 WL 842137, at *3 (D. Ariz. Mar. 5, 2021) (citing *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009)).

In determining the appropriate measure of attorney's fees, the court must exercise its discretion to achieve a "reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The lodestar method of awarding attorneys' fees "is especially appropriate in class actions where the relief sought—and obtained—is ... primarily injunctive." *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021) (citation omitted); *see also Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 307 (D.D.C. 1996) ("Courts generally regard the lodestar method, which uses the number of hours reasonably expended, as the best approach in cases where the nature of the settlement evades the precise evaluation needed for the percentage of recovery method.") (citation omitted). The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565

F.3d 1097, 1102 (9th Cir. 2009).

After calculating the lodestar amount, "[t]he court may then enhance the lodestar with a multiplier, if necessary, to arrive at a reasonable fee." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). But "courts have found a multiplier to be double counting because the difficulty of the litigation is taken into account in the billable hours and fee rates used to calculate the lodestar figure." *Osher*, 945 F. Supp. at 307 (citation omitted). "Other factors that have warranted the application of a multiplier are: (1) the complexity and magnitude of counsel's task; (2) the quality of counsel's representation; (3) the results achieved by counsel; and (4) public policy considerations." *Id.* at 308 (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1435 (S.D.N.Y. 1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995)).

Lead Counsel for Plaintiffs ("Lead Counsel") gave the Court a declaration that contains a chart listing the number of hours that Shareholders' Counsel have expended on the Derivative Matters as of approximately May 20, 2025. ECF No. 34-2 at 11–12. The chart lists the number of hours expended by each of the six law firms serving as Shareholders' Counsel; the total number of hours is 873.96. *Id* at 12. The chart also lists the calculated lodestar amount for each of the six law firms; the total calculated lodestar amount is $683,986.57. *Id.* The chart does not provide Shareholders' Counsel's hourly rates used to calculate the lodestar amount. *Id.* Lead Counsel's declaration also contains a separate chart listing Shareholders' Counsel's expenses; the total expenses of the six law firms is $22,546.95. *Id.*

Here, the Court's approval of Shareholders' Counsel's intended Fee and Expense Award of $1,400,000 would result in a lodestar multiplier of approximately 2.04. Mot. at 23. This lodestar multiplier is calculated by dividing the intended Fee and Expense Award by the total lodestar amount.

The Court considers whether a lodestar multiplier of 2.04 is reasonable. The Court is persuaded by the fact that the complexity, magnitude, and difficulty of litigating the Derivative Matters is already represented by the number of hours expended as used in the

base lodestar amount calculation.  Enhancing the lodestar amount by an additional multiplier as a way of recognizing said complexity, magnitude, and difficulty would be possibly redundant, although could be justifiable as a reflection of the quality of counsel's representation.

Still, the Court does not need to decide the issue of shareholders' counsel's fees at this preliminary approval stage.  *See In re Lyft, Inc. Derivative Litig.*, 2024 WL 4505474, at *7 ("[T]he Court need not—and does not—decide the issue of attorneys' fees now.  Preliminary approval of the settlement is not an endorsement or pre-approval of any future fee request, which will be considered at the final fairness hearing.").  The Court will scrutinize the facts and arguments provided in Shareholders' Counsel's forthcoming motion for the Fee and Expense Award, and orders counsel to provide its hourly rates in said motion.  For now, the Court finds that the proposed attorneys' fees does not bar its preliminary approval of the Settlement.

        ii.      <u>Shareholders' Service Awards</u>

The court now considers the proposed service awards, also known as incentive awards.  "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  These awards generally do not render a settlement inequitable.  *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  In the class action setting, incentive awards are "fairly typical" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action."  *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Here, each of the three Plaintiffs filed a separate derivative action which were then consolidated in the present litigation.  Mot. at 5–6.  And Davies and Pallas each made Section 220 demands on ImmunityBio.  *Id.* at 5.  As such, the Shareholders have expended their energies to advance the present litigation and can be compensated for their service with the proposed service awards.  Further, the proposed amount of $2,500

appears reasonable because it falls within the range of service awards that courts have granted in other derivative action settlements.

But, as with the issue of attorneys' fees, the Court does not need to decide on the issue of service awards at this preliminary approval stage. *In re Lyft, Inc. Derivative Litig.*, 2024 WL 4505474, at *6 ("[T]he Court will decide at the final approval stage whether the requested awards are warranted"). The Court will rule on this issue after reviewing the forthcoming motion, which should provide detailed information on the Shareholders' time, energy, and resources spent on this litigation and settlement process. Nevertheless, because the incentive awards are not per se unreasonable, the Court concludes that the current service award provision should not bar preliminary approval of the Settlement.

### D.    Schedule of Events

At the preliminary approval hearing, the Court set the final settlement date to be November 4, 2025. The deadline for shareholders to object is therefore October 7, 2025. This would provide shareholders approximately 9 weeks to object (assuming they are provided notice within 10 days after the preliminary approval hearing). This is more than sufficient time to object. *See In re Lyft, Inc. Derivative Litig.*, 2024 WL 4505474, at *7 (ordering shareholders to be given at least six weeks from the publication of the notice of settlement to object); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 716 F. App'x at 609 (affirming lower court's approval of a settlement that gave shareholders more than three months between the publication of the notice and the objection deadline, though noting that it has approved windows of time to object as short as 31 days).

Further, Shareholders' Counsel must file their motion for attorneys' fees and expenses by September 5, 2025. Defendants must file any opposition to the motion for attorneys' fees and expenses by September 26, 2025. And Shareholders' Counsel must file any reply to Defendants' opposition by October 21, 2025.

### CONCLUSION

**IT IS HEREBY ORDERED** this 28 day of July 2025, as follows:

1.     Except for terms defined herein, the Court adopts and incorporates the definitions in the Stipulation for the purposes of this order.

2.     The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation and the exhibits attached thereto, subject to further consideration at the Settlement Hearing to be held as described below.

3.     A hearing (the "Settlement Hearing") shall be held on November 4, 2025, at 1:30 p.m., in Courtroom 12A at the United States District Court for the Southern District of California to, among other things:  (a) determine whether the proposed Settlement, on the terms and conditions provided for in the Stipulation, is fair, reasonable, and adequate and in the best interests of ImmunityBio and all Current ImmunityBio Shareholders; (b) determine whether the Court should finally approve the Settlement and enter the Judgment, substantially in the form attached as Exhibit E to the Stipulation, dismissing the Action with prejudice against Defendants, and extinguishing and releasing the Released Claims as against the Released Persons; (c) consider Shareholders' Counsel's application for an award of attorneys' fees and litigation expenses (the "Fee and Expense Award"); and (d) consider any other matters that may properly be brought before the Court in connection with the Settlement.

4.     The Settlement Hearing may be adjourned by the Court from time to time without further notice to Current ImmunityBio Shareholders other than by announcement at the Settlement Hearing or other adjournment thereof, or a notation on the docket in the Action.

5.     The Court reserves the right to approve the Settlement at or after the Settlement Hearing, with such modifications as may be consented to by the Parties, and without further notice to the Current ImmunityBio Shareholders.  The Court retains jurisdiction over this Action to consider further applications arising out of or connected with the proposed Settlement.

6.     The Court approves, as to form and content, the Summary Notice attached as Exhibit C to the Stipulation and the Notice of Proposed Settlement of Shareholder

Derivative Matters, Hearing Theron, and Right to Appear (the "Notice") attached as Exhibit D to the Stipulation as (i) the best notice practicable under the circumstances; (ii) notice that is reasonably calculated, under the circumstances, to apprise Current ImmunityBio Shareholders of the pendency of the Action, the effect of the proposed Settlement (including the Releases to be provided thereunder), Shareholders' Counsel's Fee and Expense Award in connection with the Settlement, Current ImmunityBio Shareholders' rights to object to any aspect of the Settlement, and to appear at the Settlement Hearing; (iii) due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process, and all other applicable law and rules.  The date and time of the Settlement Hearing shall be included in the Summary Notice and Notice when they are distributed.

7.      No later than ten (10) business days after the entry of this Preliminary Approval Order (the "Notice Date"), ImmunityBio shall: (i) post the Notice and the Stipulation (and exhibits thereto) on the Investor Relations page of ImmunityBio's website and maintain the documents there until after the Settlement Hearing; (ii) publish the Summary Notice in *Investors Business Daily* with a link to the Company's Investor Relations webpage where the Notice and Stipulation (and exhibits thereto) will be posted and available; and (iii) file with the U.S. Securities and Exchange Commission (the "SEC") the Notice and Stipulation (and exhibits thereto) as exhibits to a Current Report on Form 8-K.

8.      ImmunityBio shall pay any and all costs and expenses related to providing notice of the proposed Settlement ("Notice Costs") regardless of whether the Court declines to approve the Settlement or the Effective Date otherwise fails to occur.  In no event shall Plaintiffs, any other ImmunityBio shareholder, the Defendants, or any of their attorneys (including Shareholders' Counsel) be responsible for any Notice Costs.

9.    No later than twenty-one (21) days before the Settlement Hearing, Defendants' Counsel shall serve on Plaintiffs' counsel in the Derivative Actions and file with the Court an appropriate declaration with respect to the notices.

10.    As set forth in the Notice, any Current ImmunityBio Shareholder who continues to own shares of ImmunityBio common stock through the date of the Settlement Hearing and who objects to the proposed Settlement, the proposed Judgment to be entered in connection with the Settlement, or Shareholders' Counsel's application for a Fee and Expense Award, or who otherwise wishes to be heard ("Objector"), may appear in person or by his, her, or its attorney at the Settlement Hearing and present any evidence or argument that may be proper and relevant; provided, however, that no Objector shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the Judgment to be entered thereon, or Shareholders' Counsel's application for a Fee and Expense Award, unless he, she, or it has, no later than twenty-eight (28) days before the Settlement Hearing (unless the Court in its discretion shall thereafter otherwise direct, upon application of such person and for good cause shown), filed written objections with the Court and sent by hand or by first class mail, postage pre-paid to Shareholders' Counsel and the Clerk of Court at the following addresses:

Shareholders' Counsel

Justin A. Kuehn

KUEHN LAW, PLLC

53 Hill Street, Suite 605

Southampton, NY 11968

Telephone: (833) 672-0814

justin@kuehn.law

Clerk of Court

United States District Court

Southern District of California

333 West Broadway, Suite 420

San Diego, CA 92101

11.    Any objections must: (i) state whether the Objector intends to appear at the Settlement Hearing; (ii) provide the Objector's name, legal address, and telephone number; (iii) provide proof of being a Current ImmunityBio Shareholder as of the Record Date and representation that the Objector will continue to own ImmunityBio stock as of the date of the Settlement Hearing; (iv) the dates the Objector acquired ImmunityBio shares and the number of shares held; (v) a detailed statement of the Objector's specific position with respect to the matters to be hear at the Settlement Hearing, including a statement of each objection being made; and (vi) provide the grounds for each objection or the reason for the Objector's desire to appear and to be heard.  The Parties are authorized to request from any Objector additional information or documentation sufficient to prove his, her, or its holdings of ImmunityBio common stock.

12.    Any Person who fails to object in the manner prescribed above shall be deemed to have waived such objection (including the right to appeal), unless the Court in its discretion allows such objection to be heard at the Settlement Hearing, and shall forever be barred from raising such objection in this Action or any other action or proceeding or otherwise contesting the Settlement, Shareholders' Counsel's application for a Fee and Expense Award, or any other matter related to the Settlement, in the Action or any other action or proceeding, and will otherwise be bound by the Judgment to be entered and the releases to be given.

13.    The Plaintiffs shall file and serve a motion for final approval of the Settlement and any application for a Fee and Expense Award by September 5, 2025.  If Defendants respond to Plaintiffs' final approval motion or the application for a Fee and Expense Award, they shall do so by September 26, 2025.  If Objectors seek to file objections to the Settlement, they shall do so on or before twenty-eight (28) days before the Settlement

Hearing.  Any reply papers in support of the motion for final approval, Fee and Expense Award, or in response to any objections are to be filed with the Court no later than October 21, 2025.

14.    If the Settlement is approved by the Court following the Settlement Hearing, the Court shall enter the Judgment substantially in the form attached to the Stipulation as Exhibit E.

15.    In the event that the Settlement is terminated in its entirety pursuant to the terms of Stipulation or the Effective Date otherwise fails to occur for any reason, the Settlement and the Stipulation shall be canceled and terminated; this Order (except as otherwise provided by the Stipulation) shall become null and void and be without prejudice to the rights of the Parties and Current ImmunityBio Shareholders; and all proceedings in, and parties to, the Action shall revert to their status in this Action before the Stipulation was filed.

16.    All discovery and other proceedings in this Action (except as may be necessary to carry out the terms and conditions of the proposed Settlement) are hereby stayed and suspended until further order of the Court.  Except as provided in the Stipulation, pending final determination of whether the Stipulation should be approved, all parties to the Action are hereby enjoined against instituting, commencing, prosecuting, continuing, or in any way participating in, whether directly, representatively, individually, derivatively on behalf of ImmunityBio, or in any other capacity, any action or other proceeding asserting any Released Claims against the Released Persons, and all Current ImmunityBio Shareholders to the extent they are acting, or purporting to act, derivatively on behalf of ImmunityBio, are hereby enjoined against instituting, commencing, prosecuting, continuing, or in any way participating in any action or other proceeding asserting any Released Claims against the Released Persons.

17.    The Court may, for good cause shown, extend any of the deadlines set forth in this Order without further notice to anyone other than the parties to the Action and any Objectors.

1    **IT IS SO ORDERED.**

2    Dated:  July 29, 2025

3                                          Hon. Gonzalo P. Curiel
4                                          United States District Judge