UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE IMMUNITYBIO, INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No.:  3:24-cv-02014-GPC-VET<br><br>**JUDGMENT AND ORDER:**<br><br>**GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>**[ECF No. 38]** |

Before the Court is Plaintiffs' Motion for Final Approval of Derivative Settlement. ECF No. 38.  The Motion is unopposed.  ECF No. 40. On November 4, 2025, the Court held a hearing on this matter. ECF No. 41. For the reasons detailed below, the Court **GRANTS** the motion for final approval of derivative action settlement and approves the award of attorneys' fees and other costs.

## I.    BACKGROUND

### A.    Factual Allegations

This is a shareholder derivative action on behalf of nominal defendant

ImmunityBio, Inc. ("ImmunityBio" or "the Company") against current and former ImmunityBio directors and officers (collectively "Individual Defendants,"[1] and together with ImmunityBio, the "Defendants").  ImmunityBio is a biotechnology company that develops therapies and vaccines that bolster the body's immune system to treat cancers and infectious diseases.  ECF No. 34-1 at 4.  In May 2023, ImmunityBio announced that the FDA had rejected its Biologics License Application ("BLA") for Anktiva (its lead biologic product) because of current good manufacturing practice ("cGMP") deficiencies identified during a pre-license inspection of its contract manufacturing organizations ("CMOs").  *Id.*

Plaintiffs allege that between March 10, 2021 and May 10, 2023, the Individual Defendants breached their fiduciary duties to ImmunityBio and its shareholders  and committed other misconduct by failing to conduct adequate oversight and making or causing others to make a series of materially false and misleading statements that failed to disclose the following: "(1) cGMP deficiencies at the Company's third-party CMOs for Anktiva; (2) that one or more of the Company's CMOs for Anktiva did in fact suffer from cGMP deficiencies; (3) that the foregoing deficiencies were likely to cause the FDA to reject the Company's BLA for Anktiva; and (4) that the Company overstated the regulatory approval prospects for the Anktiva BLA."  *Id.*

### B.    Procedural Background

On February 9, 2024, ImmunityBio shareholder Roland Davies ("Davies") exercised his stockholder right to inspect, pursuant to  8 Del. C. § 220, and issued a "Section 220" demand to ImmunityBio to see its books and records in connection with the alleged misconduct.  *Id.* at 5.  In response, ImmunityBio produced over 600 pages of non-public, Board-level, internal corporate documents ("220 Documents").  *Id.*  Davies

---

[1] The Individual Defendants are Patrick Soon-Shiong, Richard Adcock, Cheryl L. Cohen, Michael D. Blaszyk, John Owen Brennan, Linda Maxwell, Wesley Clark, Christobel Selecky, Barry J. Simon, and David C. Sachs.

reviewed these documents, and on September 17, 2024, he served ImmunityBio's Board of Directors with a pre-suit demand under Delaware law asking the Board to begin investigating the alleged misconduct described above in Section I.A. and/or file a lawsuit against the Individual Defendants regarding said misconduct. *Id.*

On September 24, 2024, ImmunityBio shareholder Chris Pallas ("Pallas") made a substantially similar Section 220 demand on ImmunityBio. *Id.* ImmunityBio produced the responsive documents to Pallas. *Id.* Davies's demand and Pallas's demand are collectively known as the "Demands." *Id.* at 8.

On October 29, 2024, Plaintiff Gary Van Luven ("Van Luven") filed a shareholder derivative complaint on behalf of ImmunityBio against the Individual Defendants, asserting claims for violation of the Securities Exchange Act of 1934 (the "Exchange Act") and for breach of fiduciary duty, unjust enrichment, and waste of corporate assets under Delaware law. *Id.* at 12. On February 25, 2025, Plaintiff Angelo Barbieri ("Barbieri") filed a substantially similar shareholder derivative complaint on behalf of ImmunityBio against certain of the Individual Defendants, asserting substantially similar claims. *Id.* at 12–13. On February 26, 2025, Plaintiff Bong Shin ("Shin") filed a third substantially similar shareholder derivative complaint on behalf of ImmunityBio against the Individual Defendants, asserting substantially similar claims. *Id.* at 13.

On May 2, 2025, the parties to these three derivative actions (the "Derivative Actions") jointly moved to consolidate their cases and to appoint Kuehn Law, PLLC as Lead Counsel for Plaintiffs Van Luven, Barbieri, and Shin (the "Plaintiffs"); the Court granted their motion the same day. ECF No. 32.

Plaintiffs, Davies, and Pallas are collectively known as the "Shareholders," ECF No. 34-1 at 1, and together with ImmunityBio and the Defendants, as the "Parties." ECF No. 33-1 at 2.[2] The Derivative Actions and Demands together are the "Derivative Matters." *Id.*

_____

[2] Page numbers for ECF No. 33 refer to the CM/ECF pagination.

### C.    Settlement Agreement

On May 30, 2025, Plaintiffs filed an unopposed motion for preliminary approval of the proposed Settlement, ECF No. 34, and the Court held a hearing on the motion on July 25, 2025, ECF No. 36. On July 29, 2025, the Court entered an order granting preliminary approval of the Settlement and authorizing the form and manner of providing notice of the Settlement to potential Settlement Class members. ECF No. 37 ("Preliminary Approval Order").

The key terms of the Stipulation of Settlement, ECF. No. 33-1 ("Settlement Agreement" or "SA"), are as follows:

1.    Settlement Benefits

ImmunityBio will keep the corporate governance reforms set forth in Exhibit A of the Settlement Agreement in place for at least four years. *Id.* at 25.  These reforms include:

    i.    The appointment of an independent director to the Board of Directors on or before December 31, 2025;

    ii.    Enhancements to the Disclosure Committee Charter;

    iii.    Enhancements to the Audit Committee Charter;

    iv.    Public posting of Corporate Governance Guidelines and Board Committee Charters on the Company's public website and if any such documents are amended, the Company will post the updates within a reasonable time;

    v.    Quarterly Board discussion concerning topics relevant to allegations in the Plaintiffs' claims such as the Company's and its CMOs' compliance with FDA regulations and cGMP, in order to identify material risks;

    vi.    Annual legal department review and report on effectiveness of Company policies, procedures, and practices related to compliance with FDA regulations; and

    vii.    Mandatory risk assessment and compliance training on annual basis for Company employees involved with preparing financial statements,

4

manufacturing Company products, communicating with the FDA and independent external auditor, and preparing public statements.

*See* ECF No. 34-1 at 8-12; ECF No. 33-1, Ex. A.

2. <u>Releases</u>

Under the Settlement Agreement, the Derivative Matters will be fully and finally compromised and settled, the Released Claims will be released as against the Released Persons, and the Derivative Actions will be dismissed with prejudice as against the Released Persons. ECF No. 33-1 at 8.

The Released Claims include all claims, demands, rights, and causes of action based on any jurisdiction's laws that have been, could have been, or might be asserted in the Derivative Matters or in any other court, tribunal, or proceeding by the Shareholders or any other Current ImmunityBio Stockholder directly or derivatively on behalf of ImmunityBio, or by ImmunityBio directly, against any of the Released Persons, or by the Released Persons against ImmunityBio or any other Released Person, which arise out of any matters related to the Derivative Action complaints, the allegations described in the Demands, or the Derivative Actions and the institution, prosecution, and settlement thereof. *Id.* at 10.

The Released Claims do not include, and neither the Stipulation nor any part of the Settlement will affect claims relating to enforcement of the Settlement, the Stipulation, or any other agreement among any or all of the Parties and relevant insurers in connection with the Settlement. *Id.* The Released Claims also do not include the derivative claims asserted on behalf of ImmunityBio, Inc. in the unrelated shareholder derivative lawsuit pending in the Delaware Court of Chancery captioned *Carlson v. Soon-Shiong*, et al., C.A. No. 2024-1185-JTL. *Id.*

The Released Persons include ImmunityBio, the Individual Defendants, the Shareholders, and their respective past, present, or future heirs, trusts, trustees, estates, beneficiaries, and other entities and persons with whom they have legally binding relationships or duties. *Id.* at 11.

3.  Notice

In the Preliminary Approval Order, the Court ordered ImmunityBio, within ten (10) business days of the order, to: (1) post the Notice of the Settlement Agreement and the Stipulation (with corresponding exhibits) on the Investor Relations page of its website and maintain the Notice and Stipulation there until after the Settlement Hearing; (2) publish the Summary Notice of the Settlement Agreement in *Investor's Business Daily* with a link to its Investor Relations webpage where the Notice and Stipulation (with corresponding exhibits) will be posted and available; and (3) file with the U.S. Securities and Exchange Commission the Notice and Stipulation (with corresponding exhibits) as exhibits to a Current Report on Form 8-K.  *Id.* at 13.

ImmunityBio was ordered to bear all the costs and expenses of disseminating the notices of the proposed Settlement ("Notice Costs"), regardless of whether the Court declines to approve the Settlement or the Final Approval of Settlement fails to occur.  *Id.* at 14.  The Shareholders, any other ImmunityBio stockholder, the Defendants, or any of their attorneys (including Shareholders' Counsel) are not responsible for any Notice Costs.  *Id.*

The notice plan, as approved by the Court, has been implemented by ImmunityBio. ECF No. 38-2 ("Kuehn Decl.") ¶ 34. ImmunityBio posted a copy of the Notice and the Stipulation, with its exhibits, on the Investor Relations page of the company's website and oversaw the publishing of the Summary Notice in *Investor's Business Daily*. *Id*. On August 8, 2025, ImmunityBio filed a Form 8-K with the SEC, updating its litigation disclosure to advise of the status of the Settlement and the location of the Notice and Stipulation. *Id*. The deadline for Stockholders to object to the Settlement was October 7, 2025, and ImmunityBio has not received or is aware of any objections to the Settlement. *Id*. ¶ 34-35, 61.

4.  Attorneys' Fees and Expenses

At the time of the preliminary approval hearing, the Parties had not agreed on the amount of Shareholders' Counsel's attorneys' fees.  Preliminary Approval Order at 6.

The court then ordered that Shareholders' Counsel may petition the Court for an award of attorneys' fees and litigation expenses (the "Fee and Expense Award") not exceeding $2,500,000.  *Id.*  Shareholders' Counsel had informed the Court that they intended to petition the Court for a Fee and Expense Award of $1,400,000.  *Id.* ImmunityBio and its insurers will be responsible for paying any Fee and Expense Award, and the Parties agree that no other person or entity will be responsible for contributing to the payment of the Fee and Expense Award.  ECF No. 33-1 at 15.

In this instant motion, Shareholders' Counsel has applied for $850,000 total for all attorneys' fees, expenses, and service awards. ECF No. 38-1 ("Mot.") at 9.[3] Subtracting the service awards, this amounts to $809,390.34 in attorneys' fees and $28,019.66 in expenses. Kuehn Decl. ¶ 82. The requested award is not opposed by Defendants. *Id*.

### 5.  Service Award

Plaintiffs' Counsel has applied for service awards of $2,500.00 for each of the five Shareholders, only to be paid if the Court approves them.  *Id.* ¶ 91.  The service awards are to be paid from the requested $850,000 Fee and Expense Award in recognition of the Shareholders' efforts in initiating, prosecuting, and settling the Derivative Matters.  *Id.* ¶ 82. The failure of the Court to approve any requested service awards will not impact the Settlement.  ECF No. 33-1 at 16-17.  Neither ImmunityBio nor any of the Individual Defendants will pay for any portion of any service awards.  *Id.* at 17.

## II.   LEGAL STANDARD

A derivative action may be settled only with the court's approval.  Fed. R. Civ. P. 23.1(c).  "In determining whether to approve the settlement of a derivative action, courts look to cases and standards under Rule 23(e) of the Federal Rules of Civil Procedure for guidance by analogy."  *In re CPI Aerostructures S'holder Derivative Litig.*, , 2023 WL 2969279, at *3 (E.D.N.Y. Feb. 14, 2023); *see also In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5634607, at *1 (C.D. Cal. Jan. 24, 2017) (When reviewing a derivative action

---

[3] Page numbers for Mot. refer to the CM/ECF pagination.

settlement for approval, "[t]he Court takes as instructive case law governing preliminary approval of class action settlements under Rule 23(e)").

"Rule 23 requires courts to employ a two-step process in evaluating a class action or derivative action settlement." *In re Wells Fargo & Co. Sharehold Derivative Litig.*, No. 16-CV-05541-JST, 2019 WL 13020734, at *4 (N.D. Cal. May 14, 2019). First, the court "must make a preliminary determination that the settlement is fair, reasonable, and adequate" under Rule 23(e)(2). *Id.* (internal citation and quotations omitted). Only if a settlement is "fundamentally fair, adequate, and reasonable" may it be approved. *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12-CV-06003-CRB, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015) (internal citation and quotations omitted). "[I]f the court preliminarily approves a derivative action settlement, notice 'must be given to shareholders or members in the manner that the court orders.'" *In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *4 (quoting Fed. R. Civ. P. 23.1(c)). The court then holds a hearing to "make a final determination whether the settlement is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

## III.    DISCUSSION

### A.    Final Approval of Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any proposed class action settlement. Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Such an evaluation is made in the context of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In Re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Any fairness determination requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton v. Boeing Co.*, 327 F.3d 938,

960 (9th Cir. 2003). Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In the context of a derivative action, courts evaluate fairness, reasonableness, and adequacy by considering a range of factors, such as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation . . . the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel…" *In re Wells Fargo & Co. Sharehold Derivative Litig.*, No. 16-CV-05541-JST, 2019 WL 13020734, at *4 (N.D. Cal. May 14, 2019) (internal citation and quotations omitted). When evaluating the adequacy of nonmonetary settlement provisions like corporate governance reforms, courts examine whether a company is already undertaking the provisions independently of the settlement. If the reforms proposed in the settlement were already implemented or going to be implemented by the company, then courts are more doubtful of the value of the settlement. *See In re Lyft, Inc. Derivative Litig.*, 2024 WL 4505474, at *4 (N.D. Cal. Oct.

16, 2024) ("the Court is skeptical that the reforms presented here are a benefit *of the settlement* rather than [the company's] own independent actions") (emphasis in original); *In re Pinterest Derivative Litig.*, 2022 WL 2079712, at *3 (N.D. Cal. June 9, 2022) (critical of the fact that "a fair number of the reforms were already in place as a result of the corporation's own actions addressing the [underlying action's allegations]").

Overall, the principal factor that courts consider is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Pinterest Derivative Litig.*, 2022 WL 484961, *3 (N.D. Cal. Feb. 16, 2022) (internal citation and quotations omitted). Further, courts scrutinize whether the proposed settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12-CV-06003-CRB, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015) (internal citation and quotation omitted); *see also Lloyd v. Gupta*, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016) (noting that courts consider whether "the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interest of the shareholder class") (internal citation and quotations omitted).

For the reasons that follow, the Court finds that the Settlement Agreement reached by the Parties is fair, reasonable, and adequate and GRANTS final approval of the Settlement.

i.    Benefits to ImmunityBio

The Parties assert that the proposed settlement will benefit ImmunityBio because the corporate governance reforms (listed in Exhibit A of the Stipulation) will lower ImmunityBio's risk of further loss of investor confidence and lawsuits. Mot. at 19. The Parties argue that the reforms will also enhance ImmunityBio's value by improving its decision-making and its Board's oversight of these decisions. *Id.* The reforms will engender greater investor trust in the accuracy of the company's public disclosures, the integrity of the company's management, and the independence and effectiveness of the company's corporate governance and Board oversight. *Id.*

"[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *see also In re Ceradyne, Inc.*, No. SACV 06-919-JVS (PJWx), 2009 WL 10671494, at *2 (C.D. Cal. June 9, 2009) ("Non-pecuniary benefits to the corporation have been deemed adequate consideration for the settlement of derivative suits ... [and] can be particularly valuable when the relief is intended to prevent future harm" (citations omitted)). "Courts have recognized that corporate governance reforms ... provide valuable benefits to public companies." *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (quotation omitted).

Courts have found that corporate governance reforms that directly address alleged corporate misconduct are beneficial to companies in derivative action settlement approvals. *See Moore v. Verb Tech. Co., Inc.*, 2021 WL 11732976, at *4 (C.D. Cal. Mar. 1, 2021) (finding that "corporate governance measures that specifically address the allegations in the derivative action" substantially benefit the company by helping prevent it from making additional misleading statements about its app development agreement); *In re Taronis Techs., Inc. S'holder Derivative Litig.*, 2021 WL 842137 (D. Ariz. Mar. 5, 2021) (finding that corporate governance changes conferred sufficient benefit to company because they addressed compliance with public reporting requirements that the company had allegedly not complied with).

The Court agrees with the Parties that the corporate governance reforms listed in Exhibit A of the Stipulation benefit ImmunityBio. Though non-pecuniary, the reforms benefit ImmunityBio specifically because they directly address the alleged deficiencies listed in Plaintiffs' derivative actions. For example, the reforms dictate that ImmunityBio's management will report to the Board at least quarterly about the company's compliance with FDA regulations and cGMP and about ImmunityBio's CMOs' compliance with cGMP. ECF No. 33-1 at 25–26. The reforms also mandate changes to ImmunityBio's Disclosure Committee Charter. *Id.* The Disclosure Committee

would now be charged with establishing and maintaining processes for ensuring that the company does not disclose false or misleading information in its SEC reports, quarterly earnings press releases, and public statements concerning the company's drug development, compliance with cGMP, and interactions with the FDA. *Id.* at 29. This specifically tackles the Derivative Actions' allegation that the Individual Defendants made or allowed others to make false and misleading statements about cGMP deficiencies at ImmunityBio's CMOs and the prospects for FDA approval of ImmunityBio's lead drug product.

Most notably, the reforms mandate that the Company shall establish and maintain training programs that are "focused on compliance, internal controls policies and proceeds, compliance risk assessment, and complaint reporting and investigation." ECF No. 33-1, Ex. D at 59. These trainings will be mandatory for employees who are involved in preparing financial statements, manufacturing the Company's products, communicating with the FDA and the Company's independent external auditor, and drafting the Company's public statements. *Id.* at 60. These trainings would occur on an annual basis. *Id.* at 59. The Court finds that this proposed training program is substantial, directly addresses the alleged corporate misconduct, and would provide a considerable benefit to the Company.

Further, the reforms' benefits are bolstered by the fact that ImmunityBio will implement and maintain the reforms for four years following the effective date of the settlement. This is meant to be a "meaningful amount of time intended to ensure the Reforms become embedded in the Company's policies, practices, and corporate culture." Mot. at 19. The Court agrees that the multi-year implementation period would be beneficial to the company. *See Chenoy v. Lyft, Inc.*, No. 20-CV-09257-HSG, 2025 WL 948065, at *5 (N.D. Cal. Mar. 28, 2025) ("Because the Settlement Agreement fixes these reforms in place for a three-year period, the reforms may well engender some lasting trust in [the company's] safety and corporate governance, yielding financial benefits for [the company]"). The reforms also benefit ImmunityBio beyond the initial four-year

maintenance period because they mandate annual regulatory compliance training for ImmunityBio employees who help prepare and disseminate the company's public statements. *See* ECF No. 33-1 at 26–27.

The Court finds that the Settlement is in the best interest of ImmunityBio, especially considering that the Board unanimously determined that it was. *Id.* at 12; *see In re Southern Co. S'holder Derivative Litig.,* 2022 WL 4545614, at *6 (N.D. Ga. June 9, 2022) (non-defendant directors' unanimous vote for derivative settlement is "exercise of business judgment" that "warrants substantial judicial deference") (collecting cases).

### ii.    Arm's-Length Negotiations & Adequacy of Representation

The Parties assert that the settlement is fair because their counsel is experienced in derivative actions and understands the Derivative Actions' merits, and because they agreed to the settlement only after extensive negotiations. Mot. at 14.

Courts must ensure that a settlement agreement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). An agreement reached in good faith after well-informed, arms-length negotiation is "entitled to a presumption of fairness." *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Court finds the Parties' settlement negotiation process to be fair. Parties were represented by counsel who understood the strengths and weaknesses of the claims and defenses in the Derivative Matters. Mot. at 14–15. Shareholders' Counsel conducted research and investigated the merits of Plaintiffs' claims by reviewing ImmunityBio's press releases and SEC filings, analyzing the Company's corporate governance guidelines, and reviewing over 600 pages of confidential, board-level Company documents that ImmunityBio produced in response to Davies's and Pallas's Section 220 demands. Mot. at 15–16.

1  The Court also finds the Parties' negotiations to be non-collusive.  Plaintiffs' and

2  Defendants' counsel exchanged settlement offers over the course of several months.  ECF

3  No. 33-1 at 5.  In December 2024, Shareholders' Counsel sent Defendants' Counsel a

4  settlement demand with proposed corporate governance reforms, and in February 2025,

5  Defendants' Counsel responded with a counteroffer of proposed reforms.  *Id.*  Parties'

6  Counsel continued exchanging proposals, and in March 2025, the Parties agreed to the

7  settlement's material terms.  *Id.*  Moreover, the Parties did not discuss or negotiate

8  Shareholders' Counsel's fees until after they agreed to the settlement's material terms.

9  *Id.* at 6.  This favors a finding of no collusion.  *See Moore v. Verb Tech. Co., Inc.*, 2021

10  WL 11732976, at *5 (C.D. Cal. Mar. 1, 2021) (finding "no signs of collusion" because

11  "[t]he parties did not begin to negotiate the attorneys' fees and expenses to be paid to

12  Plaintiff's Counsel until after they reached an agreement on the [corporate governance

13  reforms]").  In fact, the Parties here had not yet agreed on the point of attorneys' fees by

14  the time the motion for preliminary approval of settlement had been made.  ECF No. 33-1

15  at 6.  This lack of agreement, which only resolved in time for this instant motion, further

16  supports a finding that the Parties have not colluded in preparing their settlement.

17          iii.    Risks and Costs of Further Litigation

18          The Parties assert that the settlement eliminates the risks and costs of ongoing

19  litigation and allows ImmunityBio to return its full attention to its business and restoring

20  its reputation among investors.  Mot. at 20.

21          "To determine whether the proposed settlement is fair, reasonable, and adequate,

22  the Court must balance the continuing risks of litigation (including the strengths and

23  weaknesses of the Plaintiffs' case), with the benefits afforded . . . and the immediacy and

24  certainty of a substantial recovery."  *Velazquez v. Int'l Marine & Indus. Applicators,*

25  *LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018).  Further, "[c]ourts agree that

26  derivative actions are particularly complex and 'rarely successful.'"  *de Rommerswael v.*

27  *Auerbach*, 2019 WL 7753447, at *4 (C.D. Cal. Jan. 7, 2019) (quoting *In re Pac. Enters.*

28  *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  "The doctrine of demand futility, the

business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs." *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 281–82 (S.D.N.Y. 2015).

Regardless of their merit, Plaintiffs' claims would be difficult and costly to sustain if this litigation were to proceed. Plaintiffs risked the possibility that the Derivative Matters might not have withstood challenges at the pleading stage, especially given Rule 23.1's heightened standards for pleading demand futility. Mot. at 20. And according to Plaintiffs, "the claims against all the Individual Defendants rest on circumstantial evidence." ECF No. 34-1 at 19. Further, the Parties admit that discovery "would be exceedingly costly, complex, and time-consuming" given the large number of documents, depositions, and expert reports they would rely on. *Id.* at 19–20; Mot. at 22; *see also Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, 2019 WL 7753447, at *4 (C.D. Cal. Jan. 7, 2019) (approving derivative action settlement in part by noting the potential cost of discovery where biotech drug company was sued over allegedly false and misleading statements about drug product's safety and efficacy). These high risks and costs contrast with the settlement's certainty and immediacy. In short, "[a] number of risks are posed by continued litigation, while settlement assures broad corporate reform." *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 282.

### iv.    Reaction of the Settlement Class

An overwhelmingly positive reaction of class members to a proposed settlement significantly weighs in favor of the settlement's adequacy. *Delacruz v. CytoSport, Inc.*, 2014 WL 12648451, at *7 (N.D. Cal. Jul. 1, 2014). Indeed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (finding only three objections out of 57,630 potential class members weighed in favor of the settlement's adequacy). "Courts

reviewing settlements of shareholder derivative suits have applied the same presumption." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 518 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Accordingly, in the absence of any objections here, "[t]his presumption merely buttresses the Court's prior conclusions regarding the Settlement's fairness." *Id*.

v.     <u>Adequacy of Notice</u>

Rule 23.1(c) requires that notice of the settlement "be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). This requirement "guards against collusive settlement practices." *Bushansky v. Armacost*, No. 12–CV–01597–JST, 2014 WL 2905143, at *1 (N.D. Cal. June 25, 2014). In particular, "notice and court approval of settlements under Rule 23.1 discourage private settlements under which the plaintiff-stockholder and his attorney profit to the exclusion of the corporation and nonparty stockholders." *Papilsky v. Berndt*, 466 F.2d 251, 258 (2d Cir. 1972).

The Court previously approved the parties' notice plan. *See* Preliminary Approval Order at 14-17. Plaintiffs' counsel, upon this instant motion, have submitted a declaration and several exhibits establishing that they implemented the approved plan. *See* ECF No. 39. Specifically, as outlined in the Settlement Agreement, ImmunityBio (1) posted the Notice of the Settlement Agreement and the Stipulation (with corresponding exhibits) on the Investor Relations page of its website and maintain the Notice and Stipulation there until after the Settlement Hearing; (2) published the Summary Notice of the Settlement Agreement in *Investor's Business Daily* with a link to its Investor Relations webpage where the Notice and Stipulation (with corresponding exhibits) will be posted and available; and (3) filed with the U.S. Securities and Exchange Commission the Notice and Stipulation (with corresponding exhibits) as exhibits to a Current Report on Form 8-K. *See* ECF No. 33-1 at 13.

The deadline to submit objections to the Settlement was October 7, 2025, and ImmunityBio has not received or is aware of any objections to the Settlement. Kuehn Decl. ¶ 34-35, 61. Thus, the Court finds the parties have sufficiently provided notice and

16

1    satisfied Rule 23.1(c).

2         Given the settlement's benefits to ImmunityBio, the Parties' non-collusive

3    negotiation, the uncertainty and potentially high cost of further litigation, the reaction of

4    the Settlement Class, and the adequacy of notice, the Court finds the settlement to be

5    sufficiently fair, reasonable, and adequate, and approves the settlement.

6    **B.    Shareholders' Counsel's Fees and Service Awards**

7         Together with its motion for final approval, Shareholders' Counsel has also filed

8    an unopposed motion for award of attorneys' fees, reimbursement of expenses, and

9    service awards.

10              i.    Shareholders' Counsel's Fees

11        Plaintiffs may be awarded attorneys' fees in derivative suits if the resolution of the

12   claim confers a "substantial benefit" on the corporation.  *See Mills v. Elec. Auto-Lite Co.*,

13   396 U.S. 375, 393-95 (1970).  "Courts have consistently approved attorneys' fees and

14   expenses in shareholder actions where the plaintiffs' efforts resulted in corporate

15   governance reforms but no monetary relief."  *In re Taronis Techs., Inc. S'holder*

16   *Derivative Litig.*, 2021 WL 842137, at *3 (D. Ariz. Mar. 5, 2021) (citing *In re Rambus*

17   *Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009)).

18        In determining the appropriate measure of attorney's fees, the court must exercise

19   its discretion to achieve a "reasonable result."  *In re Bluetooth Headset Prods. Liab.*

20   *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  The lodestar method of awarding attorneys'

21   fees "is especially appropriate in class actions where the relief sought—and obtained—is

22   ... primarily injunctive."  *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021) (citation

23   omitted); *see also Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 307 (D.D.C. 1996)

24   ("Courts generally regard the lodestar method, which uses the number of hours

25   reasonably expended, as the best approach in cases where the nature of the settlement

26   evades the precise evaluation needed for the percentage of recovery method.") (citation

27   omitted).  The lodestar amount is the product of the number of hours reasonably spent on

28   the litigation multiplied by a reasonable hourly rate.  *McCown v. City of Fontana*, 565

F.3d 1097, 1102 (9th Cir. 2009).

After calculating the lodestar amount, "[t]he court may then enhance the lodestar with a multiplier, if necessary, to arrive at a reasonable fee." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). But "courts have found a multiplier to be double counting because the difficulty of the litigation is taken into account in the billable hours and fee rates used to calculate the lodestar figure." *Osher*, 945 F. Supp. at 307 (citation omitted). "Other factors that have warranted the application of a multiplier are: (1) the complexity and magnitude of counsel's task; (2) the quality of counsel's representation; (3) the results achieved by counsel; and (4) public policy considerations." *Id.* at 308 (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1435 (S.D.N.Y. 1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995)).

Initially, Plaintiffs' counsel sought a Fee and Expense Award of $1,400,000, which included a lodestar multiplier of approximately 2.04. Preliminary Approval Order at 19. Since then, the Parties have agreed to $850,000. Mot. at 25. After subtracting the $28,109.66 in expenses and the $12,500 in Service Awards, the net attorneys' fee is $809,390.34. *Id.* at 32. As of July 29, 2025, Shareholders' Counsel's total lodestar is $754,819.65. *Id.* at 31. Thus, the multiplier has been reduced to 1.07. *Id.*[4]

A lodestar multiplier of 1.07 is reasonable and within the acceptable range. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, Appendix, n.6 (9th Cir. 2002) (finding most multiplier between 1.0 and 4.0). The Court is persuaded by the fact that the complexity, magnitude, and difficulty of litigating the Derivative Matters is already represented by the number of hours expended as used in the base lodestar amount calculation. However, the minimal addition to the multiplier is acceptable given that directing change to ImmunityBio's corporate governance structure and oversight and appointing a new independent director is a notable result. Mot. at 29.

---

[4] This lodestar multiplier is calculated by dividing the intended Fee and Expense Award by the total lodestar amount.

Thus, the Court concludes that a Fee and Expense Award of $850,000 is reasonable.

ii.    Shareholders' Service Awards

Plaintiffs ask the Court to award five $2,500 service award payments to the Shareholders, which will be drawn from the attorneys' fee award.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). These awards generally do not render a settlement inequitable. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). In the class action setting, incentive awards are "fairly typical" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Here, each of the three Plaintiffs filed a separate derivative action which were then consolidated in the present litigation. Mot. at 5–6. And Davies and Pallas each made Section 220 demands on ImmunityBio. *Id.* at 5. As such, the Shareholders have expended their energies to advance the present litigation and can be compensated for their service with the proposed service awards. Further, the proposed amount of $2,500 is reasonable because it falls within the range of service awards that courts have granted in other derivative action settlements.

After consideration, the Court finds the $2,500 incentive award to each Shareholder reasonable.

## CONCLUSION

Based on the above, it is hereby **ORDERED**:

1.    Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in the Stipulation and the Preliminary Approval Order.

2.    The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement of the Action, as well as personal jurisdiction over all of the Parties and each of the Current ImmunityBio Shareholders, and it is further determined that the Parties and all Current ImmunityBio Shareholders, as well as their transferees, heirs, executors, successors, and assigns, are bound by this Order and Final Judgment (the "Judgment").

3.    The Notice has been provided to Current ImmunityBio Shareholders pursuant to and in the manner directed by the Preliminary Approval Order, proof of the Summary Notice and Notice were filed with the Court, and full opportunity to be heard has been offered to all Parties and Current ImmunityBio Shareholders. The Court finds that the form and means of publishing the Summary Notice and Notice were the best practicable under the circumstances and were given in full compliance with the requirements of Rule 23.1 of the Federal Rule of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules, and that all Current ImmunityBio Shareholders, as well as their transferees, heirs, executors, successors, and assigns, are bound by this Judgment.

4.    Based on the record in the Action, each of the provisions of Rule 23.1 of the Federal Rules of Civil Procedure have been satisfied, and the Action has been properly maintained according to the provisions of Rule 23.1.

5.    The Court finds that the Settlement is fair, reasonable, adequate, and in the best interests of ImmunityBio and Current ImmunityBio Shareholders.

6.    Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, this Court fully and finally approves the Settlement in all respects, and the Parties are directed to consummate the Settlement in accordance with the terms of the Stipulation. The Clerk of the Court is directed to enter and docket this Judgment.

7.    The Action is hereby dismissed with prejudice as to the Defendants. The foregoing dismissal is without fees or costs, except as otherwise provided in Paragraph 15 below or as otherwise provided in the Stipulation or the Preliminary Approval Order.

8.      Upon the Effective Date, Shareholders, the Company, the Current ImmunityBio Shareholders, the Defendants, and all of their respective successors-in-interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, shall be deemed to have, and by operation of this Judgment shall have, completely discharged, dismissed with prejudice on the merits, released and settled, to the fullest extent permitted by law, the Released Claims against the Released Persons and shall be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any of the Released Claims against any of the Released Persons.

9.      As set forth in the Stipulation and Notice, "Released Persons" means ImmunityBio, the Individual Defendants, the Shareholders, and their respective past, present, or future heirs, trusts, trustees, estates, beneficiaries, distributees, agents, employees, fiduciaries, partners, subsidiaries, affiliates, associated entities, stockholders, principals, officers, directors, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, advisors, attorneys, personal or legal representatives, associates and insurers, co-insurers and re-insurers.

10.    As set forth in the Stipulation and Notice, "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, direct or derivative, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including known claims and Unknown Claims (as defined in the Stipulation), whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule (including claims within the exclusive jurisdiction of the federal courts), that are, have been, could have been, could now be, or in the future could,

can, or might be asserted, in the Derivative Matters or in any other court, tribunal, or proceeding (a) by the Shareholders or any other Current ImmunityBio Shareholder directly or derivatively on behalf of ImmunityBio, or by ImmunityBio directly, against any of the Released Persons or (b) by the Released Persons against ImmunityBio or any other Released Person, which, now or hereafter, are based upon, arise out of, or relate to any of the actions or inactions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims, or any other matters related to: (i) the allegations, claims, and events described in the complaints filed in the Derivative Actions; (ii) the allegations, claims, and events described in the Demands; and (iii) the Derivative Actions and the institution, prosecution and settlement thereof; provided, however, "Released Claims" does not include, and neither the Stipulation nor any aspect of the Settlement shall affect claims relating to enforcement of the Settlement, the Stipulation, or any other agreement among any or all of the Parties and relevant insurers in connection with the Settlement. For the avoidance of doubt, Released Claims do not include the derivative claims asserted on behalf of ImmunityBio, Inc. in an unrelated shareholder derivative lawsuit pending in the Delaware Court of Chancery captioned *Carlson v. Soon-Shiong, et al.*, C.A. No. 2024-1185-JTL

11.    The Parties are hereby authorized, without further approval from the Court, to agree to adopt such amendments, modifications, and expansions of the Stipulation that are consistent with this Judgment and the Stipulation and that do not materially limit the rights of the Parties or Current ImmunityBio Shareholders under the Stipulation. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

12.    Nothing in this Judgment shall in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation.

13.    Neither this Judgment, nor the Settlement, nor any act or omission in connection therewith shall be deemed or argued to be evidence of or to constitute an admission or concession by: (a) the Defendants as to (i) the truth of any fact alleged by

Plaintiffs, (ii) the validity of any claims or other issues raised, or which might be or might have been raised, in the Action or in any other litigation, (iii) the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or (iv) any wrongdoing, fault, or liability of any kind by any of them, which each of them expressly denies; or (b) Plaintiffs that any of their claims are without merit, that any of the Defendants or Released Persons had meritorious defenses, or that damages or other relief recoverable in the Action would not have exceeded the terms of the Settlement. The Parties or any Released Persons may file the Stipulation and/or this Judgment in any action that has been or may be brought against them in order to support a claim or defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or in connection with any insurance litigation.

14.     In the event that the Settlement is terminated or the Effective Date otherwise fails to occur for any other reason, then (i) the Settlement and the Stipulation (other than Section F and Paragraph 3.3 thereof) shall be canceled and terminated; (ii) this Judgment and any related orders entered by the Court in this Action shall in all events be treated as vacated, *nunc pro tunc*; (iii) the Releases provided under this Judgment and the Stipulation shall be null and void; (iv) to the extent the Fee and Expense Award has been paid, it shall be repaid to the persons and entities (including the insurers) who paid on behalf of the Defendants within ten (10) business days after termination of the Settlement; (v) the fact of the Settlement shall not be admissible in any proceeding before any court or tribunal; (vi) all proceedings in the Action shall revert to their status as of immediately prior to filing of the Stipulation of Settlement; and no materials created by or received from another Party that were used in, obtained during, or related to settlement discussions shall be admissible for any purpose in any court or tribunal, or used, absent consent from the disclosing Party, for any other purpose or in any other capacity, except to the extent that such materials are otherwise required to be produced during discovery in any other litigation; (vii) the Parties shall jointly petition the Court for a revised schedule for further

proceedings; and (viii) the Parties shall proceed in all respects as if the Settlement and the Stipulation (other than Section F and Paragraph 3.3 thereof) had not been entered into by the Parties.

15.    Shareholders' Counsel are awarded attorneys' fees and expenses in the sum of $850,000 ("Fee and Expense Award"), which the Court finds to be fair and reasonable, to be paid in accordance with the terms of the Stipulation.

16.    Shareholders are each awarded a service award ("Service Award") of $2,500, in recognition of their participation and efforts in the prosecution of the Action to be awarded from the Fee and Expense Award.

17.    No proceedings or Court order with respect to any Fee and Expense Award shall in any way disturb or affect this Judgment (including precluding the Judgment from being Final or otherwise being entitled to preclusive effect), and any such proceedings or Court order shall be considered separate from this Judgment.

18.    Nothing in this Judgment dismisses or releases any claim by or against any Party arising out of a breach of the Stipulation or violation of this Judgment.

19.    Without affecting the finality of this Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration, enforcement, and consummation of the Settlement and this Judgment.

20.    There is no just reason to delay the entry of this Judgment as a final judgment in the Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in the Action.

**IT IS SO ORDERED.**

Dated:  November 5, 2025

Hon. Gonzalo P. Curiel
United States District Judge